DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
David H. Wander, Esq.
dhw@dhclegal.com
*Attorneys for Counsel Financial II LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

JEFFREY LEW LIDDLE,                                    Case No. 19-10747-shl

                                Debtor.
--------------------------------------------------------X
TARA LIDDLE,

                                Plaintiff,             Adv. Pro. No. 19-01147-shl

        - against -

COUNSEL FINANCIAL II LLC,

                                Defendant.
--------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF TARA LIDDLE'S MOTION FOR AN ORDER (A) DIRECTING THE TURNOVER OF PLAINTIFF TARA LIDDLE'S PROPERTY, (B) FOR INJUNCTIVE RELIEF, (C) FOR ENTRY OF AN ORDER SCHEDULING A HEARING AND (D) FOR A TRO

Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
*Attorneys for Counsel Financial II LLC*

Of Counsel
David H. Wander, Esq. (dhw@dhclegal.com)
Michael Wexelbaum, Esq. (mw@dhclegal.com)
Michael D. Katz, Esq. (mdk@dhclegal.com)

660113v.7

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT .......................................................................................................................... 9

    I.     PRELIMINARY INJUNCTION STANDARD ................................................................ 9

    II.    PLAINTIFF IS SEEKING BOTH (A) A MANDATORY PRELIMINARY
         INJUNCTION, AND (B) THE ULTIMATE RELIEF REQUESTED IN THIS
         ACTION, AND THUS SHE MUST SHOW A "CLEAR" OR "SUBSTANTIAL"
         LIKELIHOOD OF SUCCESS ON THE MERITS AND MAKE A "STRONG
         SHOWING" OF IRREPARABLE HARM FOR EACH OF THOSE REASONS ....... 12

    III.   PLAINTIFF HAS FAILED TO ESTABLISH THE REQUISITE ELEMENTS TO
         BE ENTITLED TO EITHER A MANDATORY OR A PROHIBITORY
         PRELIMINARY INJUNCTION ................................................................................. 15

        A.    Plaintiff Has Utterly Failed to Show that Absent a Preliminary Injunction,
             She Would Suffer Irreparable Harm, Let Alone Make a "Strong Showing"
             of Such Harm ...................................................................................................... 15

        B.    Plaintiff Has Failed to Show that the Balance of the Hardships Tips in Her
             Favor .................................................................................................................. 21

        C.    Plaintiff's Failure to Provide CF2 With the Expedited and Limited
             Discovery Authorized By This Court and Which CF2 Needed to Properly
             Contest the "Likelihood of Success on the Merits" Prong of Injunctive
             Relief Warrants the Denial of Her Motion .......................................................... 22

             1.    Estoppel ................................................................................................... 23

             2.    Ratification .............................................................................................. 25

             3.    Waiver ..................................................................................................... 26

             4.    Fraud/Aiding and Abetting Fraud ........................................................... 26

CONCLUSION ...................................................................................................................... 29

i

# TABLE OF AUTHORITIES

## Cases

*Adamsons v. Wharton*,
   771 F.2d 41 (2d Cir. 1985) ................................................................................. 19

*Air Line Pilots Ass'n v. United Air Lines, Inc.*,
   No. 11-cv-4661, 2011 WL 4543820 (E.D.N.Y. Sept. 29, 2011) ............................................ 29

*Allstate Ins. Co. v. Harvey Family Chiropractic*,
   677 F. App'x. 716 (2d Cir. 2017) ................................................................. 10, 15

*Atlas MF Mezzanine Borrower, LLC v. Macquarie Texas Loan Holder, LLC*,
   No. 17-cv-1138, 2017 WL 729128 (S.D.N.Y. Feb. 23, 2017) ................................................ 16

*Basso v. NYU*,
   363 F.Supp.3d 413 (S.D.N.Y. 2019) .................................................................. 27

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
   784 F.3d 887 (2d Cir. 2015) ......................................................................... 11

*C.D.S. Inc. v. Bradley Zetler, CDS, LLC*,
   691 F. App'x 33 (2d Cir. 2017) ..................................................................... 11

*Cacchillo v. Insmed, Inc.*,
   638 F.3d 401 (2d Cir. 2011) ......................................................................... 11

*Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*,
   152 F.Supp.3d 159 (S.D.N.Y. 2016) .................................................................. 25

*Carpenter v. Crespo*,
   161 A.D.3d 934, 78 N.Y.S.3d 165 (2d Dep't 2018) ...............................................22-23

*Doe v. Zucker*,
   No. 17-cv-1005, 2019 WL 111020 (N.D.N.Y. Jan. 4, 2019) ....................................12-13, 29

*Farr v. Newman*,
   18 A.D.2d 54, 238 N.Y.S.2d 204 (4th Dep't 1963) ...............................................24-25

*First Corporate Sedans, Inc. v. U.S.*,
   Nos. 94-cv-7642, 95-cv-1621, 1996 WL 145958 (S.D.N.Y. Apr. 1, 1996) ...................... 18, 20

*Fjord v. AMR Corp. (In re AMR Corp.)*,
   502 B.R. 23 (Bankr. S.D.N.Y. 2013) ...........................................................10-11, 15, 16

*Golden Krust Patties, Inc. v. Bullock*,
   957 F.Supp.2d 186 (E.D.N.Y. 2013) ................................................................. 10

ii

*Greer v. Mehiel,*
   No. 15-cv-6119, 2016 WL 828128 (S.D.N.Y. Feb. 24, 2016) ................................................. 15

*H'Shaka v. O'Gorman,*
   758 F. App'x 196 (2d Cir. 2019) ......................................................................................... 10

*Intelligent Digital Sys., LLC v. Beazley Ins. Co., Inc.,*
   962 F.Supp.2d 451 (E.D.N.Y. 2013) ................................................................................... 26

*Jill Real Estate, Inc. v. Smyles,*
   150 A.D.2d 640, 541 N.Y.S.2d 515 (2d Dep't 1989) ...................................................... 23-24

*Mad Scientists Brewing Partners, LLC v. Deptula,*
   No. 655/2012, 2013 WL 692949 (N.Y. Sup. Ct. Feb. 13, 2013) ..................................... 26-27

*Mendelsohn v. Nat'l Westminister Bank, U.S.A. (In re Frank Santora Equip. Corp.),*
   256 B.R. 354 (Bankr. E.D.N.Y. 2000) ................................................................................. 26

*Monarch Ins. Co. of Ohio v. Ins. Corp. of Ir. Ltd.,*
   835 F.2d 32 (2d Cir. 1987) ................................................................................................. 25

*Mongelli v. Chicago Ins. Co.,*
   No. 99-cv-8149, 2002 WL 32096578 (E.D.N.Y. Jan. 15, 2002) ........................................... 20

*Mui v. Union of Needletrades, Indus. & Textile Emps., AFL-CIO,*
   No. 97-cv-7270, 1998 WL 513052 (S.D.N.Y. Aug. 19, 1998) .............................................. 18

*Murray v. New York,*
   604 F.Supp.2d 581 (W.D.N.Y. 2009) ................................................................................... 19

*MVP Health Plan, Inc. v. Optuminsight, Inc.,*
   No. 13-cv-1578, 2016 WL 6638190 (N.D.N.Y. Sept. 30, 2016) .......................................... 26

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,*
   883 F.3d 32 (2d Cir 2018) ....................................................................................... 10, 11, 12

*New York v. Actavis PLC,*
   787 F.3d 638 (2d Cir. 2015) ............................................................................... 11, 12, 14, 15

*Oliver v. N.Y. State Police,*
   No. 15-cv-00444, 2019 WL 2009182 (N.D.N.Y. May 6, 2019) ........................................... 19

*Payne v. U.S.,*
   No. 87-cv-103, 1988 WL 142146 (D. Vt. Sept. 22, 1988) ................................................... 20

*Pisarri v. Town Sports Int'l, LLC,*
   758 F. App'x 188 (2d Cir. 2019) ............................................................................... 9-10, 15

iii

*RLI Ins. Co. v. Athan Contracting Corp.,*
    667 F.Supp.2d 229 (E.D.N.Y. 2009) ....................................................................... 25

*Salinger v. Colting,*
    607 F.3d 68 (2d Cir. 2010) ........................................................................... 11, 15-16

*Sampson v. Murray,*
    415 U.S. 61 (1974)........................................................................................... 18-19

*Schulz v. U.S.,*
    No. 15-cv-01299, 2016 WL 11235225 (N.D.N.Y. Feb. 11, 2016)............................ 20

*Silberberg v. Bd. of Elections of the State of N.Y.,*
    216 F.Supp.3d 411 (S.D.N.Y. 2016) ...................................................................... 12

*Solus Alt. Asset Mgmt. LP v. GSO Capital Partners L.P.,*
    No. 18-cv-232, 2018 WL 620490 (S.D.N.Y. Jan. 29, 2018) .................................... 16

*Stewart v. INS,*
    762 F.2d 193 (2d Cir. 1985) .................................................................................. 19

*Stojowski v. D'Sa,*
    28 A.D.3d 645, 813 N.Y.S.2d 753 (2d Dep't 2006) ............................................... 23

*Stuckey v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
    131 F.Supp.3d 73 (S.D.N.Y. 2015) ............................................................... 16-17, 18

*Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.),*
    Nos. 18-cv-6658, 18-cv-10936, 2019 WL 1570808 (S.D.N.Y. Apr. 11, 2019) ...................... 27

*Vargas Realty Enters., Inc. v. CFA W. 111 St., L.L.C. (In re Vargas Realty Enters., Inc.),*
    440 B.R. 224 (S.D.N.Y. 2010).............................................................................. 25

*Williams v. Rosenblatt Sec. Inc.,*
    136 F.Supp.3d 593 (S.D.N.Y. 2015) ...................................................................... 20

*Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision,*
    568 F. App'x 53 (2d Cir. 2014) ............................................................................. 11

iv

Counsel Financial II LLC ("CF2") submits this memorandum of law in opposition to Plaintiff Tara Liddle's ("Plaintiff's") motion for an Order (i) directing the turnover of Plaintiff's property, (ii) for injunctive relief, (iii) for a hearing, and (v) for a TRO.

## PRELIMINARY STATEMENT

The Debtor Jeffrey L. Liddle (the "Debtor") pledged to CF2 and two of its affiliates all of the proceeds of sale of the Cooperative Apartment Units 19M and 19N located in the cooperative apartment building at 11 Fifth Avenue, New York, New York 10003 (the "New York Property"), which was owned by the Debtor and his wife, Plaintiff, as tenants by the entirety.  While CF2 believes that he pledged all of the proceeds of sale of the New York Property with Plaintiff's knowledge and consent, to the extent that he did not, then he defrauded not only CF2 and its two affiliates, but her as well in doing so. The purpose of this adversary proceeding is to determine which one is the case and thus who has the right to the $1,090,603.88[1] currently being held on deposit in the Debtor-in-Possession Account ("DIP Account"), which represents fifty-percent of the proceeds of sale of the New York Property that Plaintiff claims is hers.

Plaintiff's motion seeks, through a mandatory preliminary injunction, to have the Court grant her the ultimate relief she seeks in this action, i.e., the release of the $1,090,603.88 currently being held on deposit in the DIP Account. However, Plaintiff has utterly failed to meet her burden of showing that she is entitled to such a drastic and extraordinary pre-trial remedy.

First, Plaintiff has absolutely failed to show, let alone make a "strong showing," that absent the requested preliminary injunction, she will suffer irreparable harm, the single "most

---

[1] Plaintiff has already received, with the consent of CF2, $20,000 of the $1,090,603.88 she is seeking to be released. *See* Dkt. Nos. 82-83. Nevertheless, for purposes of clarity, CF2 will use the $1,090,603.88 figure requested in her motion. In addition, CF2 is willing to consent to the release of an additional $95,000 that has been requested by Plaintiff upon receipt of appropriate documentation of the purpose thereof and need therefor, and also contingent on her agreeing, as with the past releases of money, that in the event that this Court determines that she does not own the $1,090,603.88 free and clear of any liens, claims, or interests, she will repay such funds to CF2.

1

important prerequisite for injunctive relief." The fight in this adversary proceeding is *literally* over money, i.e., the right to the $1,090,603.88 share of the proceeds of sale of the New York Property. Absent the granting of Plaintiff's requested preliminary injunction, the $1,090,603.88 will remain in the Debtor's DIP account until this action is concluded. If Plaintiff prevails on the merits, the funds will be released to her. As the money is already subject to the control and protection of this Court, there is simply no basis for Plaintiff to claim that she will suffer irreparable injury if the money is not released to her now when it will be released to her if and when she wins the case. And even if there is some unknown danger of the $1,090,603.88 being misappropriated or lost, "monetary loss" (here, the literal loss of money) is the "quintessential form of reparable injury."

Second, the balancing of the hardships clearly tips in CF2's favor. If the Court were to grant Plaintiff's motion and release the $1,090,603.88 currently being held in the DIP Account, the funds would likely be lost to CF2 forever. As Plaintiff herself has acknowledged, she has substantial debts and liabilities and if the funds are released, she will use them to pay off such debts and liabilities, including taxes, and obtain new living accommodations in New York for her and her husband, the Debtor. Thus, even if CF2 proves at trial that it is entitled to the $1,090,603.88, it is likely that it will never receive them. On the other hand, if Plaintiff's motion is denied, the $1,090,603.88 will remain in the Debtor's DIP account and subject to the control and protection of this Court until a final decision is rendered in this case. Thus, Plaintiff is fully protected on her claim. The only harm she will suffer is the delay in receiving such funds.

Finally, given that Plaintiff has failed to show that she will suffer irreparable injury absent a preliminary injunction, let alone make a "strong showing" of such injury, and also because the balancing of the hardships clearly tips in CF2's favor, there is no need for the Court

2

660113v.7

to even address the merits prong of the preliminary injunction standard. But if it does, the Court should deny Plaintiff's motion as she has utterly failed to provide CF2 with the expedited and limited discovery authorized by this Court and which CF2 needed to properly contest this prong. Whether Plaintiff had knowledge of the Debtor's pledge of all of the proceeds of sale of the New York Property and/or whether she actively participated in such transaction is key to determining who is entitled to the $1,090,603.88. Until Plaintiff conducts a proper search for responsive documents, CF2 is unable to fully scrutinize her truncated testimony for its truthfulness and decide whether to press forward with its claim.

As Plaintiff has completely failed to show that she has met the heightened standard to be entitled to a mandatory preliminary injunction granting her the ultimate relief requested in this action, let alone the standard to be entitled to a prohibitory preliminary injunction, her motion for a preliminary injunction must be denied.

## STATEMENT OF FACTS

This adversary proceeding and Plaintiff's current motion for a preliminary injunction centers around the parties' dispute concerning the rights to $1,090,603.88 currently being held on deposit in the DIP Account of the Debtor. *See* Aff. of Michael Wexelbaum ("Wexelbaum Aff."), ¶¶ 2-3; Compl. ¶¶ 1-5, 19-31; Mot. at ¶¶ 9-14. The $1,090,603.88 represents fifty-percent of the proceeds of sale of the New York Property. *See* Compl. ¶¶ 2-3, 5; Mot. at ¶ 9. Plaintiff claims that as she owned the New York Property with her husband, the Debtor, as tenants by the entirety, fifty-percent of the proceeds of sale of such property, or the $1,090,603.88, belongs to her. *See* Compl. ¶¶ 2-3, 5, 24-25; Mot. at ¶ 9.

As set forth in the Affidavit of Michael Wexelbaum, the Debtor, over the course of ten months, exchanged numerous documents with CF2 and/or its affiliates pursuant to which he

3

pledged as collateral for loans CF2 and/or its affiliates made or were to make to his law firm, Liddle & Robinson LLP ("L&R"), the New York Property, the proceeds from the refinancing of the third-party mortgage(s) on the New York Property, and the proceeds of any sale of the New York Property. *See* Wexelbaum Aff. ¶¶ 15-23; Exs. K-S.

First, in a letter dated September 28, 2016, from the Debtor to Felice Callahan, Esq. ("Callahan") of CF2's parent company, Counsel Financial Services, the Debtor stated that "my mortgage refinance applications have been submitted . . . . Upon closing these mortgages, there should be $1.1 million to be used immediately to reduce our loan balance." *See* Wexelbaum Aff. ¶ 15; Ex. K.

Second, in a Term Sheet dated October 5, 2016, between LIG Capital LLC ("LIG"), an affiliate of CF2 and subsidiary of Counsel Financial Services, as Lender, and L&R, as Borrower, signed by the Debtor on October 6, 2016, and which named the Debtor as Guarantor of the loan covered thereby, it states in the "Mandatory Pre-Payments" section that those mandatory pre-payments included "100% of excess proceeds from the refinancing of mortgages on properties owned by Guarantor." *See* Wexelbaum Aff. ¶ 16; Ex. L.

Third, in a draft of a Term Promissory Note dated October 2016, between L&R, as Borrower, and LIG, as Lender, with the Debtor's handwritten modifications of that draft Note appearing on the first two pages thereof, it states in the "Mandatory Prepayments" section on the second page thereof that the mandatory prepayments required thereunder would include, *inter alia*, "(ii) 100% of all proceeds (*net of closing costs, fees and the like*)[2] derived from the refinancing of properties owned by Jeffrey L. Liddle (i.e. 111[sic][3] Fifth Avenue, Apts. 19M and

---

[2] Italicized words are the Debtor's handwritten modifications.

[3] Typographical error - "111" should be "11."

4

19N, New York, NY and 560 Main Street, Quiogue, NY), that are in excess of the mortgages on such properties . . . ." *See* Wexelbaum Aff. ¶ 17; Ex. M.

Fourth, in a Term Promissory Note dated October 13, 2016, in the principal amount of $1,500,000, made by L&R, payable to the order of LIG, personally guaranteed by the Debtor, and initialed and signed by the Debtor both on behalf of L&R and personally: (a) the personal guaranty states that the Debtor "individually agrees to those covenants set forth in Sections 2 and 4 of this Note that are applicable to the undersigned as Guarantor and agrees to be bound by the provisions of Sections 16 and 17 of this Note," (b) Section 2b(i) of the Note states (in conformity with the Debtor's handwritten modifications of the prior draft of this Note - Exhibit M) that the "Mandatory Prepayments" include "100% of all proceeds (net of closing costs, fees and expenses), within three (3) business days of receipt, derived from the refinancing of properties owned by Jeffrey L. Liddle (i.e. 111[sic][4] Fifth Avenue, Apts. 19M and 19N, New York, NY and 560 Main Street, Quiogue, NY), that are in excess of the mortgages on such properties," and (c) Section 16 of the Note states, in bold print, that "After maturity of this Note (whether by acceleration or otherwise) or if Lender so revokes the foregoing authorization following the occurrence and during the continuance of an Event of Default, Borrower shall remit to Lender 100% of Net Fees and Expenses and 100% of proceeds in excess of mortgages on the properties owned by Jeffrey L. Liddle (as described   in Section 2b(i)) for application to Borrower's obligations under this Note in such manner as Lender shall determine." *See* Wexelbaum Aff. ¶ 18; Ex. N.

Fifth, in a draft of a Term Sheet dated March 3, 2017, from LIG to L&R and the Debtor, it provides (a) in the "Collateral" section that "Lender will secure mortgages on each of NY

---

[4] Typographical error - "111" should be "11."

apartment and Hampton residence (i.e. 111[sic][5] Fifth Avenue, Apts. 19M and 19N, New York, NY and 560 Main Street, Quiogue, NY), and (b) in the "Mandatory Pre-Payments" section that those mandatory prepayments shall include "100% of all proceeds (net of closing costs, fees and expenses), within three (3) business days of receipt, derived from the refinancing of properties owned by Jeffrey L. Liddle (i.e. 111[sic][6] Fifth Avenue, Apts. 19M and 19N, New York, NY and 560 Main Street, Quiogue, NY) that are in excess of the mortgages on such properties . . . ." *See* Wexelbaum Aff. ¶ 19; Ex. O.

Sixth, in a proposed Term Sheet dated May 16, 2017, from CF2, as Lender, to L&R, as Borrower, and with the Debtor and two of his then partners as Guarantors, it states in the "Collateral" section thereof that there would be "Additional collateral" consisting of "mortgages on all real estate owned by Guarantors including but not limited to: 111[sic][7] Fifth Avenue, Apts. 19M and 19N, New York, NY; 560 Main Street, Quiogue, NY; 540 Main Street, Quiogue, NY . . . ." *See* Wexelbaum Aff. ¶ 20; Ex. P.

Seventh, in a proposed Term Sheet dated May 17, 2017, from CF2, as Lender, to L&R, as Borrower, and with the Debtor and two of his then partners as Guarantors, it states in the "Collateral" section thereof that there would be "Additional collateral" consisting of "mortgages on all real estate owned by Guarantors including but not limited to: 560 Main Street and 554[8]

---

[5] Typographical error - "111" should be "11."

[6] Typographical error - "111" should be "11."

[7] Typographical error - "111" should be "11."

[8] This corrected the address of the second property owned by the Debtor in Quiogue, New York from "540" on Exhibit P to the correct address of "554" on Exhibit Q.

6

Main Street, Quiogue, NY collectively, the 'Hamptons Property'; 111[sic][9] Fifth Avenue, Apts. 19M and 19N, New York, NY . . . ." *See* Wexelbaum Aff. ¶ 21; Ex. Q.

Eighth, in an executed Term Sheet dated June 1, 2017, between Counsel Financial Holdings LLC ("Holdings"), another affiliate of CF2 and subsidiary of Counsel Financial Services, as Lender, to L&R, as Borrower, and the Debtor, as Guarantor, and which was signed by the Debtor, it states in the "Collateral" section thereof that there would be "Additional collateral" consisting of "mortgages on all real estate owned by Guarantor located at 560 Main Street and 554 Main Street, Quiogue, NY [(]collectively, the 'Hamptons Property') plus sales proceeds if either property is sold shall be used to pay down debt to Lender. ***In the event of the sale of the property located at 111[sic][10] Fifth Avenue, Apts. 19M and 19N, New York, NY sale proceeds in excess of mortgage shall be used to repay debt to Lender.***" *See* Wexelbaum Aff. ¶ 22; Ex. R (emphasis added).

Finally, and most importantly, in a Revolving Promissory Note dated June 2, 2017, made by L&R and payable to Holdings, in the principal amount of $1,000,000 and personally guaranteed by the Debtor, it states (a) in the definition section of the Note, and in particular Section 1i thereof, that the "Hamptons Property" is defined as "that certain real estate owned by Jeffrey L. Liddle located at 560 Main Street and 554 Main Street, Quiogue, New York that is subject to a mortgage in favor of Lender,"[11] (b) in the definition section of the Note, and in particular Section 1q thereof, the "New York Property" is defined as meaning "that certain real estate owned by Jeffrey L. Liddle located at 11 Fifth Avenue, Apts. 19M and 19N, New York, New York," (c) in the "Mandatory Prepayments Based on Net Fees and Expenses" section of

---

[9] Typographical error - "111" should be "11."

[10] Typographical error - "111" should be "11."

[11] That mortgage on the Hamptons Property was never granted by the Debtor to Holdings.

7

the Note (Section 2b thereof) that "***In the event that the Borrower and/or Guarantor (as applicable) sells the New York Property, any sales proceeds in excess of the mortgage amount on the Hamptons Property[12] shall be used to prepay the Borrower's debt with Lender and/or its affiliates.*** Specifically, Borrower hereby agrees that upon the sale of the Hamptons Property and/or New York Property, applicable sale proceeds will be used to pay off all indebtedness of Borrower as follows: first, to payoff the indebtedness owing to LIG Capital, LLC ('LIG'), second to payoff the indebtedness owing to Lender, and third any remaining proceeds shall be used to reduce the principal amount owed to Counsel Financial II LLC ('CF')." *See* Wexelbaum Aff. ¶ 23; Ex. S (emphasis added). Thus, as is undoubtedly clear from the above, the Debtor pledged to CF2, LIG, and Holdings all of the proceeds of any sale of the New York Property.

CF2 brought a lawsuit against L&R and the Debtor in the Supreme Court of the State of New York, County of Erie (the "State Court Action") to collect on L&R's and the Debtor's default on a loan CF2 made to L&R. *See* Wexelbaum Aff. ¶¶ 8-11; Compl. ¶ 21; Mot. at ¶¶ 11-13. Consistent with the Debtor's pledge of all of the proceeds of any sale of the New York Property to CF2, LIG, and Holdings, CF2 sought a temporary restraining order and order of attachment, in part, against any such proceeds. CF2's requested temporary restraining order was granted, prohibiting the Debtor from transferring, dissipating, or otherwise disposing of the proceeds of any sale of the New York Property pending the hearing and determination of CF2's motion for an order of attachment. With the sale of the New York Property scheduled for February 7, 2019, the parties entered into a Stipulation and Order dated February 1, 2019, allowing the sale to go through and requiring the proceeds from such sale to be deposited in

---

[12] As Liddle never granted a mortgage on the Hamptons Property to Holdings, the "mortgage amount on the Hamptons Property" is zero and thus all sale proceeds from the sale of the New York Property are in excess of the mortgage amount on the Hamptons Property and must be used to pay back L&R's debt with CF2, LIG, and Holdings.

8

escrow. *See* Wexelbaum Aff. ¶ 8; Ex. E. The Stipulation and Order was "So Ordered" by the state court and entered on February 4, 2019. *See id.* On February 11, 2019, CF2's motion for an order of an attachment was granted. On March 7, 2019, the state court signed and entered an Order of Attachment, which was granted over, among other things, the proceeds of sale of the New York Property being held in escrow and directed the Escrow Agent to deposit such funds into the Court Registry. *See* Wexelbaum Aff. ¶ 9; Ex. F.

As is clear from the above, the Debtor pledged all of the proceeds of sale of the New York Property to CF2, LIG, and Holdings. Consistent with that pledge, CF2 obtained a temporary restraining order and an Order of Attachment against such funds in the State Court Action. Plaintiff now claims that as she owned the New York Property with the Debtor as tenants by the entirety, fifty-percent of the proceeds of sale of the same are hers. Thus, the question in this adversary proceeding is whether (i) Plaintiff authorized the Debtor to pledge her fifty-percent share of the proceeds of sale of the New York Property, (2) Plaintiff should be estopped from denying the Debtor's authority to pledge her fifty-percent share of the  proceeds of sale of the New York Property; (3) Plaintiff ratified the Debtor's pledge of her fifty-percent share of the proceeds of sale of the New York Property; (4) Plaintiff waived her right to deny the Debtor's authority to pledge her fifty-percent share of the proceeds of sale of the New York Property; and/or (5) whether the absence of Plaintiff's signature to such pledge was the product of fraud or misrepresentation.

## ARGUMENT

## I.    PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies." *Pisarri v. Town Sports Int'l, LLC*, 758 F. App'x 188, 190 (2d Cir. 2019) (internal

9

660113v.7

quotation marks and citation omitted). As "an extraordinary and drastic remedy[,] [a preliminary injunction] should not be routinely granted," (*id.*), and is never "awarded as of right." *H'Shaka v. O'Gorman*, 758 F. App'x 196, 198 (2d Cir. 2019) (internal quotation marks and citation omitted). "The purpose of a preliminary injunction is to preserve the relative position of the parties" during the pendency of the action. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37-38 (2d Cir 2018) (internal quotation marks and citation omitted).

In order to be entitled to a preliminary injunction, the moving party "must show (1) irreparable harm [in the absence of the injunction]; (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of its claims to make them a fair ground for litigation[] [and] a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *H'Shaka*, 758 F. App'x at 198 (internal quotation marks and citation omitted). *See also Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x. 716, 718 (2d Cir. 2017) (same). Moreover, the Second Circuit and other lower courts in the Second Circuit have added a fourth factor, holding that even "where a plaintiff demonstrates a likelihood of success on the merits [as opposed to only sufficiently serious questions going to the merits to make them a fair ground for litigation], the Court must nonetheless [still] consider the balance of hardships and issue the injunction only if the balance of hardships *tips in the plaintiff's favor*." *Golden Krust Patties, Inc. v. Bullock*, 957 F.Supp.2d 186, 194 (E.D.N.Y. 2013) (internal quotation marks and citations omitted; emphasis added). [13],[14]

---

[13] This is distinguished from having to show that the "balance of the hardships *tip[] decidedly in favor of the moving party*," which a party must show where he or she only establishes "serious questions going to the merits of its claims to make them a fair ground for litigation." *H'Shaka*, 758 F. App'x at 198 (internal quotation marks and citation omitted).

[14] As one court correctly put it, to "say that there is confusion in this Circuit regarding the appropriate standard for assessing an application for a preliminary injunction would be an understatement." *Bullock*, 957 F.Supp.2d at 194 (attempting to reconcile conflicting Second Circuit cases regarding the standard for a preliminary injunction). Moreover, this Court has noted the "nuance in how courts in this Circuit have articulated the standard for injunctive

10

*See also C.D.S. Inc. v. Bradley Zetler, CDS, LLC*, 691 F. App'x 33, 35 (2d Cir. 2017); *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015); *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010).

A preliminary injunction can be "prohibitory or mandatory." *N. Am. Soccer League, LLC*, 883 F.3d at 36. "Prohibitory injunctions maintain the status quo pending the resolution of the case; mandatory injunctions alter it." *Id.* "Because the proposed injunction's effect on the status quo drives the standard," to determine whether a requested preliminary injunction is prohibitory or mandatory, the court must "ascertain the status quo—that is, 'the last actual, peaceable uncontested status which preceded the pending controversy.'" *Id.* at 37 (citations omitted).

Where "(i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits," the party seeking a preliminary injunction is held to a higher standard. *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citation omitted). *See also Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 568 F. App'x 53, 54-55 (2d Cir. 2014) ("However, we have required the movant to meet a higher standard where: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at [trial]."); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) ("The burden is even higher on a party like Cacchillo that seeks a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo.") (internal quotation marks and citation omitted).

---

relief." *Fjord v. AMR Corp. (In re AMR Corp.)*, 502 B.R. 23, 32 n.2 (Bankr. S.D.N.Y. 2013). However, it has added that "all the formulations include irreparable harm and a review of the merits." *Id.* As held in *AMR Corp.* and as discussed below, regardless of which formulation of the preliminary injunction test is used in this case, Plaintiff's motion for a preliminary injunction must be denied due to her utter failure to establish that she would suffer irreparable injury absent such relief. *See id.*

11

Where a preliminary injunction (i) is mandatory, or (ii) seeks the ultimate relief in the action, the movant "must show a 'clear' or 'substantial' likelihood of success on the merits, and make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest" and that the balancing of the hardships tips in the plaintiff's favor. *Actavis*, 787 F.3d at 650 (citation omitted). *See also Silberberg v. Bd. of Elections of the State of N.Y.*, 216 F.Supp.3d 411, 416 (S.D.N.Y. 2016) ("Under this heightened standard, the Second Circuit requires the movant to show a clear or substantial likelihood of success on the merits and make a strong showing of irreparable harm in addition to showing that the preliminary injunction is in the public interest.") (internal quotation marks and citation omitted).

II.    **PLAINTIFF IS SEEKING BOTH (A) A MANDATORY PRELIMINARY INJUNCTION, AND (B) THE ULTIMATE RELIEF REQUESTED IN THIS ACTION, AND THUS SHE MUST SHOW A "CLEAR" OR "SUBSTANTIAL" LIKELIHOOD OF SUCCESS ON THE MERITS AND MAKE A "STRONG SHOWING" OF IRREPARABLE HARM FOR EACH OF THOSE REASONS**

As discussed above, because a higher burden applies where a movant seeks a mandatory, as opposed to a prohibitory, preliminary injunction, and also where a preliminary injunction seeks the ultimate relief requested in the action, the first step a court must take on a motion for a preliminary injunction is to determine what type of injunction is sought and what relief is requested so that it can then decide which standard applies.

Again, because the "proposed injunction's effect on the status quo drives the standard," to determine whether a requested preliminary injunction is prohibitory or mandatory, the court must "ascertain the status quo—that is, 'the last actual, peaceable uncontested status which preceded the pending controversy.'" *N. Am. Soccer League, LLC*, 883 F.3d at 37 (citations omitted). Where the preliminary injunction would "alter the status quo by commanding some

12

positive act," it is a mandatory injunction. *See Doe v. Zucker*, No. 17-cv-1005, 2019 WL 111020, at *7 (N.D.N.Y. Jan. 4, 2019) (citations omitted).

Here, there is no question that Plaintiff seeks to alter the status quo by requesting a preliminary injunction releasing the $1,090,603.88 share of the proceeds of sale of the New York Property currently behind held in the Debtor's DIP account. Prior to this proceeding, the "last actual, peaceable uncontested status" (and *only* status) of these funds was when they were held in escrow pursuant to the Stipulation and Order dated February 1, 2019, and "So Ordered" by Justice Deborah Chimes in the State Court Action on February 4, 2019. *See* Wexelbaum Aff. ¶ 8; Ex. E. The very purpose of the Stipulation and Order was to preserve the status quo. When the Debtor filed for bankruptcy, such funds were ordered turned over to the Debtor's DIP account, thereby maintaining the status quo. *See id.* ¶ 12; Ex. I. Thus, there can be no question that by asking the Court to release the $1,090,603.88 from the Debtor's DIP account, Plaintiff is asking the Court to "alter the status quo by commanding some positive act" and thus is seeking a mandatory preliminary injunction.

Moreover, Plaintiff's requested preliminary injunction undoubtedly seeks the ultimate relief requested in this action. Specifically, all the Court needs to do is compare the "Relief Requested" section of the Motion with the "Relief Requested" section of the Complaint. *Compare* Compl. at 11, *with* Mot. at 7-8. In short, both seek an immediate release of the $1,090,603.88 Plaintiff claims is hers. *See* Mot. at 7 (seeking a preliminary injunction "immediately releasing all of Plaintiff's interest in the Sale Proceeds"); Compl. at 11 (Plaintiff "prays for and demands judgment . . . as follows: . . . (iii) An immediate release of Tara Liddle's interest in the Sale Proceeds"). Additionally, if the Court were to grant Plaintiff's motion for a preliminary injunction and release the $1,090,603.88, such relief cannot be undone even if CF2

13

prevails at trial. As Plaintiff herself has acknowledged, she has substantial debts and liabilities and will be using such funds to pay them off. *See* Decl. of Pl. Tara Liddle ("Liddle Aff."), ¶¶ 12, 18. Moreover, in the State Court Action, the Debtor admitted that to the extent there were any "net proceeds of . . . sale" of the New York Property, he and his wife would be using them to "obtain new living accommodations in New York" and to "pay taxes." *See* Wexelbaum Aff. ¶ 32; Ex. Z (Aff. of Jeffrey L. Liddle ¶ 9). Simply put, granting Plaintiff's motion would ensure that even if CF2 proves it is entitled to the $1,090,603.88, it is likely that it will never receive such funds back, to its substantial prejudice.

Thus, because Plaintiff seeks a mandatory preliminary injunction and also because such injunction seeks the ultimate relief requested in this action, Plaintiff must meet a heightened standard, i.e., she "must show a 'clear' or 'substantial' likelihood of success on the merits, and make a 'strong showing' of irreparable harm," in addition to showing that the preliminary injunction is in the public interest and that the balancing of the hardships tips in her favor. *See, e.g.*, *Actavis*, 787 F.3d at 650 (citation omitted).[15]

In any event, even if the Court finds (i) that Plaintiff's requested preliminary injunction is prohibitory; and (ii) that it does not provide her with substantially all of the relief she seeks in this action and/or that such relief can be undone if CF2 prevails at trial, and thus that the heightened preliminary injunction standard does not apply, Plaintiff's motion still fails under the normal preliminary injunction standard, including the "irreparable harm," "balancing of hardships," and "review of the merits" prongs thereunder.

---

[15] Plaintiff's motion argues that the normal preliminary injunction standard applies, completely ignoring the fact that she is seeking a mandatory preliminary injunction and that such injunction seeks the ultimate relief requested in this action. *See* Mot. at ¶¶ 15-16. Again, for each of those reasons, Plaintiff must meet the heightened standard set forth above.

14

### III.   PLAINTIFF HAS FAILED TO ESTABLISH THE REQUISITE ELEMENTS TO BE ENTITLED TO EITHER A MANDATORY OR A PROHIBITORY PRELIMINARY INJUNCTION

#### A.   Plaintiff Has Utterly Failed to Show that Absent a Preliminary Injunction, She Would Suffer Irreparable Harm, Let Alone Make a "Strong Showing" of Such Harm

"It is well established that the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *AMR Corp.*, 502 B.R. at 32 (internal quotation marks and citation omitted). Irreparable harm is the single "most important prerequisite for injunctive relief." *Id.* at 33. Moreover, as discussed above, because Plaintiff here is seeking a mandatory preliminary injunction and also because the preliminary injunction would provide her with the ultimate relief she is seeking in this action, she must make a "strong showing" of irreparable harm. *Actavis*, 787 F.3d at 650 (citation omitted).

"The irreparable injury prerequisite for a preliminary injunction requires proof of harm that is actual and imminent, [] not remote or speculative." *Pisarri*, 758 F. App'x at 190 (internal quotation marks and citations omitted). "Irreparable harm exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Harvey Family Chiropractic*, 677 F. App'x. at 718 (internal quotation marks and citation omitted). *See also Greer v. Mehiel*, No. 15-cv-6119, 2016 WL 828128, at *8 (S.D.N.Y. Feb. 24, 2016) ("To make such a showing, a party seeking a preliminary injunction must demonstrate that there is a continuing harm which cannot be adequately redressed by final relief on the merits . . . .").

In determining whether the moving party has established that he or she will suffer irreparable harm absent a preliminary injunction, the court "must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the

merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (internal quotation marks and citations omitted). "It is not sufficient for a movant to demonstrate the mere possibility of irreparable harm; the movant must show that it is likely to suffer irreparable harm if equitable relief is denied." *Atlas MF Mezzanine Borrower, LLC v. Macquarie Texas Loan Holder, LLC*, No. 17-cv-1138, 2017 WL 729128, at *3 (S.D.N.Y. Feb. 23, 2017) (internal quotation marks and citations omitted).

"[M]ere injuries, however substantial, in terms of time, money and energy expended in the absence of a [preliminary injunction] are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *AMR Corp.*, 502 B.R. at 33 (internal quotation marks and citations omitted). Courts in the Second Circuit have been unanimous in holding that "[i]rreparable injury is one that cannot be redressed through a monetary award" and thus, "[w]here money damages are adequate compensation[,] a preliminary injunction should not issue." *Atlas MF Mezzanine Borrower, LLC*, 2017 WL 729128, at *3 (internal quotation marks and citation omitted). *See also Solus Alt. Asset Mgmt. LP v. GSO Capital Partners L.P.*, No. 18-cv-232, 2018 WL 620490, at *5 (S.D.N.Y. Jan. 29, 2018) ("Furthermore, it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a preliminary injunction will not issue.") (internal quotation marks and citation omitted); *Stuckey v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 131 F.Supp.3d 73, 82 (S.D.N.Y. 2015) ("Where there is an adequate remedy at law, such as an award of money damages,

16

injunctions are unavailable except in extraordinary circumstances.") (citation omitted). As the Second Circuit has stated, "monetary loss is the quintessential form of reparable injury." *Id.*

Plaintiff claims that the "irreparable harm she has and continues to suffer in the absence of an injunction is manifest":

> Since February 7, 2019, Defendant has alienated Plaintiff from her own property without due process. It has dragged Plaintiff into a fight she should have been no part of. Plaintiff's property was separate from Debtor's and her debts were separate from his, but CF II's machinations have led to her share of the Sale Proceeds being wrongfully subject to an Order of Attachment and a Judgment, and now wrongfully held in the Bankruptcy Estate.

Mot. at ¶ 23. Plaintiff's hyperbolic language aside, she is basically claiming that she has suffered and continues to suffer irreparable injury because her alleged share of the proceeds of sale of the New York Property was wrongfully subject to an order of attachment and a judgment, and now is wrongfully being held in the Debtor's DIP account. In other words, she is arguing that she has and will continue to suffer irreparable injury absent a preliminary injunction because money she claims is hers is temporarily being denied to her.

Plaintiff has absolutely failed to show, let alone make a "strong showing," that absent a preliminary injunction, she will suffer irreparable injury or that money damages would be an inadequate remedy. The fight in this adversary proceeding is *literally* over money, i.e., the $1,090,603.88 share of the proceeds of sale of the New York Property that Plaintiff claims is hers. Absent a preliminary injunction releasing such funds, the $1,090,603.88 will remain in the Debtor's DIP account until this action is concluded. If Plaintiff prevails on the merits, the $1,090,603.88 will be released to her. Importantly, the money is already subject to the control and protection of this Court. There is simply no basis for Plaintiff to claim that she will suffer irreparable injury if the money is not released to her now when it is adequately protected and will be released to her if and when she wins the case. And even if there is some unknown danger of

17

the $1,090,603.88 being misappropriated or lost, again, "monetary loss" (here, the literal loss of money) is the "quintessential form of reparable injury" for which an award of money damages is sufficient. *Stuckey*, 131 F.Supp.3d at 82. *See also First Corporate Sedans, Inc. v. U.S.*, Nos. 94-cv-7642, 95-cv-1621, 1996 WL 145958, at *3 (S.D.N.Y. Apr. 1, 1996) ("I find that First Corporate has not made a sufficient showing of irreparable injury. . . . [A]lthough First Corporate has lost use of the levied funds for now, if it is right on the merits, the funds are secure and will be released to it upon completion of this litigation. In addition, First Corporate's temporary inability to access its funds and the financial difficulties that will result do not constitute irreparable harm sufficient to justify an injunction . . . ."); *Mui v. Union of Needletrades, Indus. & Textile Emps., AFL-CIO*, No. 97-cv-7270, 1998 WL 513052, at *7 (S.D.N.Y. Aug. 19, 1998) parable harm suffered by the plaintiffs would be the inability to obtain payment from the $750,000 Fund . . . . The issuance of an injunction is not warranted where monetary damages will adequately compensate the harm. Here, the denial of payments from the Fund is a harm compensable through monetary damages.").

Plaintiff conclusorily claims that absent a preliminary injunction releasing the $1,090,603.88, she will suffer damage to her reputation. *See* Aff. of Arnold E. Reiter ("Reiter Aff."), ¶ 11 (alleging that CF2's actions "substantially damaged Tara Liddle not just from a credit rating perspective, but with respect to her participation in matters that are essential to her career"); Liddle Aff. ¶ 18 (noting that she has been unable to "pay essential invoices, including those related to my education" and "dues that are essential to my career").

However, the Supreme Court, Second Circuit, and other courts in this circuit have made clear that generalized allegations of potential harm to reputation are insufficient to constitute irreparable injury warranting injunctive relief. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 91-92

18

(1974) ("Assuming for the purpose of discussion that respondent had made a satisfactory showing of loss of income and had supported the claim that her reputation would be damaged as a result of the challenged agency action, we think the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case."); *Adamsons v. Wharton*, 771 F.2d 41, 43 (2d Cir. 1985) ("Nor did appellant show irreparable injury. As the district court noted, . . . damage to reputation can be compensated with money damages."); *Stewart v. INS*, 762 F.2d 193, 200 (2d Cir. 1985) ("Concerning injury to Steward's reputation, the *Sampson* court stated that damage to reputation 'falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction.'") (citation omitted); *Oliver v. N.Y. State Police*, No. 15-cv-00444, 2019 WL 2009182, at *7 (N.D.N.Y. May 6, 2019) ("However, the injuries that generally attend a discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute the irreparable harm necessary to obtain a preliminary injunction.") (internal quotation marks and citations omitted); *Murray v. New York*, 604 F.Supp.2d 581, 585 (W.D.N.Y. 2009) ("injuries to one's reputation are also generally not considered to be 'irreparable' for purposes of deciding an injunction motion"). Certainly here, Plaintiff's generalized allegations of harm to her reputation do not constitute "irreparable harm," let alone a "strong showing" of irreparable harm.

Plaintiff also alleges that absent an injunction, she will suffer continued financial hardship/distress and will be unable to pay her bills. In particular, she claims that she is "in arrears on [her] personal credit card bills and devoid of funds for personal expenses. I can't even travel to school" and also that she has been unable to "pay essential invoices, including those related to my education, credit card debt for which I am in default, [and] dues that are essential to

19

my career." Liddle Aff. ¶¶ 12, 18. *See also* Reiter Aff. ¶ 11 (alleging that CF2's actions have "substantially damaged Tara Liddle" from a "credit rating perspective").

However, as with harm to reputation, courts in the Second Circuit have made clear that allegations of financial harm/distress and the inability to pay one's bills/existing debts does not constitute irreparable injury, since an award of money damages would provide an adequate remedy. *See, e.g.*, *Williams v. Rosenblatt Sec. Inc.*, 136 F.Supp.3d 593, 619 (S.D.N.Y. 2015) ("The current motion basically argues that the plaintiff is in need of funds. But the requisite irreparable harm is not established by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown."); *Mongelli v. Chicago Ins. Co.*, No. 99-cv-8149, 2002 WL 32096578, at *1 (E.D.N.Y. Jan. 15, 2002) ("Financial burdens do not constitute irreparable harm, since a monetary award would compensate for the injury suffered."); *First Corporate Sedans, Inc.* 1996 WL 145958, at *3 ("First Corporate's temporary inability to access its funds and the financial difficulties that will result do not constitute irreparable harm sufficient to justify an injunction . . . ."); *Payne v. U.S.*, No. 87-cv-103, 1988 WL 142146, at *4 (D. Vt. Sept. 22, 1988) ("Generally, financial hardship does not itself constitute irreparable injury. Allegations of financial hardship where taxpayer would be left without money to pay existing debts was held not to be an irreparable injury."); *Schulz v. U.S.*, No. 15-cv-01299, 2016 WL 11235225 (N.D.N.Y. Feb. 11, 2016) ("[I]t is well-established that economic injury alone does not constitute irreparable harm for purposes of equity jurisdiction. Thus, Schulz has not demonstrated irreparable harm based on his alleged inability to pay taxes and [household] expenses and incurring of financial penalties."). The same is true here.

For all of the foregoing reasons, Plaintiff has utterly failed to show that she will suffer irreparable injury absent a preliminary injunction, let alone make a "strong showing" of such

injury. For this reason alone, the Court need not go any further and Plaintiff's motion for a preliminary injunction must be denied.

### B. Plaintiff Has Failed to Show that the Balance of the Hardships Tips in Her Favor

Plaintiff completely fails in her motion to show that the balancing of the hardships tips in her favor. In that regard, all she claims is that the "fundamental issue here is what does and does not constitute property of the Debtor's Estate. Plaintiff suffered and continues to suffer hardships because of the actions of CF II, which hardships will increase if left unchecked." Mot. at ¶ 25. However, she offers nothing else to actually explain those hardships. That failure alone is sufficient to deny her motion.

Moreover, the balancing of the hardships tips in CF2's favor and decidedly so. Again, this adversary proceeding boils down to a dispute about who is entitled to the $1,090,603.88 share of the proceeds of sale of the New York Property currently being held in the Debtor's DIP account. Plaintiff is asking this Court to take the drastic and extraordinary step of granting her a mandatory preliminary injunction releasing such funds, the ultimate relief she seeks in this action. Again, if Plaintiff's motion is granted and such funds are released, they will likely be lost forever for CF2. *See supra* pp. 13-14. Simply put, granting Plaintiff's motion would ensure that even if CF2 proves it is entitled to the $1,090,603.88, it is likely that it will never receive such funds, to its substantial detriment.

On the other hand, if Plaintiff's motion for a preliminary injunction is denied, the $1,090,603.88 will remain in the Debtor's DIP account and subject to the control and protection of this Court until a final decision is rendered in this case. Thus, Plaintiff is fully protected on her claim. If Plaintiff wins, the funds will be released to her. The only harm she will suffer is the delay in receiving such funds.

660113v.7

Thus, as it is likely that granting Plaintiff's motion will result in CF2 never receiving the

$1,090,603.88 if it ultimately prevails in this action and proves that it is entitled to such funds,

while denying Plaintiff's motion will merely delay her receiving such funds if she ultimately

prevails in this action and proves she is entitled to such funds, the balancing of the hardships

clearly tips in CF2's favor. In other words, if the preliminary injunction is denied, Plaintiff is

fully secured, whereas if the preliminary injunction is granted, CF2 is not. For this additional

reason, Plaintiff's motion for a preliminary injunction should be denied.

> **C.    Plaintiff's Failure to Provide CF2 With the Expedited and Limited Discovery
> Authorized By This Court and Which CF2 Needed to Properly Contest the
> "Likelihood of Success on the Merits" Prong of Injunctive Relief Warrants
> the Denial of Her Motion**

As discussed above, Plaintiff's motion for a preliminary injunction must be denied as she

has failed to show that she will suffer irreparable injury absent a preliminary injunction, let alone

make a "strong showing" of such injury, and also because the balancing of the hardships clearly

tips in CF2's favor. As a result, this Court need not even address the merits prong of the

preliminary injunction standard. However, if the Court does decide to reach the merits, it should

deny Plaintiff's motion as she has utterly failed to provide CF2 with the expedited and limited

discovery authorized by this Court and which CF2 needed to properly contest that Plaintiff had

met her burden of showing a "'clear' or 'substantial' likelihood of success on the merits."

As set forth above, the Debtor pledged all of the proceeds of sale of the New York

Property to CF2, LIG, and Holdings. *See supra* pp. 7-8. The New York Property was owned by

the Debtor and Plaintiff, his wife, as tenants by the entirety. *See supra* pp. 1, 3, 9.

> Where spouses own property as tenants by the entirety, a conveyance by one
> spouse, to which the other has not consented, cannot [normally] bind the entire
> fee or impair the nonconsenting spouse's survivorship interest ***Thus, generally,
> where property is held by spouses as tenants by the entirety, an agreement of
> sale signed by only one spouse is ineffective to constitute an agreement to***

22

> ***convey full title, unless it is shown, inter alia, that the nonsigning spouse had
> complete knowledge of and actively participated in the transaction, that he or
> she ratified the purchase option after the fact, or that the signing spouse was
> authorized in writing to act as the nonsigning spouse's agent in the matter.***
> However, each spouse may sell, mortgage, or otherwise encumber his or her
> rights in the property, subject to the continuing rights of the other.

*Carpenter v. Crespo*, 161 A.D.3d 934, 935, 78 N.Y.S.3d 165, 167 (2d Dep't 2018) (citations

omitted; emphasis added). Another exception to the general rule applies where the party trying to

enforce the contract can show that the "absence of [the other spouse's] signature was a product

of fraud or misrepresentation." *Stojowski v. D'Sa*, 28 A.D.3d 645, 645-46, 813 N.Y.S.2d 753,

754-55 (2d Dep't 2006).

Thus, the dispute over the $1,090,603.88 will come down to whether (1) Plaintiff

authorized in writing the Debtor to pledge her fifty-percent share of the proceeds of sale of the

New York Property, (2) Plaintiff should be estopped from denying the Debtor's authority to

pledge her fifty-percent share of the  proceeds of sale of the New York Property; (3) Plaintiff

ratified the Debtor's pledge of her fifty-percent share of the  proceeds of sale of the New York

Property'; (4) Plaintiff waived her right to deny the Debtor's authority to pledge her fifty-percent

share of the proceeds of sale of the New York Property; and/or (5) whether the absence of

Plaintiff's signature to such pledge was the product of fraud or misrepresentation. CF2 briefly

discusses the law as to (2)-(5) above below.

### 1.    Estoppel

"The general rule is that where property is held by husband and wife as tenants by

the entirety, an agreement of sale signed by only one spouse is ineffective to convey title.

However, if it is shown that the nonsigning spouse—here, the wife—*had complete knowledge of

and actively participated in the transaction, she will be estopped from denying her husband's

authority to execute the contract on her behalf.*" *Jill Real Estate, Inc. v. Smyles*, 150 A.D.2d

23

640, 642, 541 N.Y.S.2d 515, 517 (2d Dep't 1989) (citations omitted; emphasis added). "Where a party who holds land as a tenant by the entirety, with knowledge or sufficient notice of her rights, freely does what amounts to a recognition or adoption of a contract, or acts in any manner inconsistent with its repudiation, the party is thereafter equitably estopped from avoiding it." *Id. See id.* (finding wife was estopped from denying her husband's authority to execute the contract on her behalf where she "was aware that her husband had posted a 'for sale' sign on the subject property, and that he had arranged for advertisements in newspapers," "knew that her husband . . . [was] discussing the sale of the property," "accepted a check in connection with th[e] transaction," and "wrote out the name and telephone number of her attorney and gave them to the plaintiff"); *Farr v. Newman*, 18 A.D.2d 54, 60-61, 238 N.Y.S.2d 204, 210-11 (4th Dep't 1963) ("Moreover, as a tenant by the entirety, if she did not intend to be bound by the agreement, it was incumbent upon her to announce her interest in the property and indicate her objection to the sale. The Court of Appeals has indicated that circumstances of this very nature impose upon an owner of real property the duty of asserting his rights to the property. There must be a standing by and encouragement, or at least an acquiescence, on the part of the true owner in acts inconsistent with his right, knowing that the other party, acting under a false impression, is about to do what will result in his injury. Mrs. Newman neither declared her interest in the property nor objected to the contract. . . . Also, her silence, at a time when she had both the duty and the opportunity to speak, would estop her from asserting her partial ownership of the property as against Farr. Where a person wronged is silent under a duty to speak, or by an act or declaration recognizes the wrong as an existing and valid transaction, and in some degree, at least, gives it effect so as to benefit himself or so as to affect the rights or relations created by it between the

24

wrongdoer and a third person, he acquiesces in and assents to it and is equitably estopped from impeaching it.") (internal quotation marks and citations omitted).

### 2.    Ratification

Ratification is the "express or implied adoption, *i.e.*, recognition and approval, of the unauthorized acts of another. Under New York law, a principal can be held liable for the unauthorized acts of an agent that the principal later ratifies." *Vargas Realty Enters., Inc. v. CFA W. 111 St., L.L.C. (In re Vargas Realty Enters., Inc.)*, 440 B.R. 224, 235 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). "'Ratification requires acceptance by the principal of the benefits of an agent's acts, with full knowledge of the facts [of the transaction], in circumstances indicating an intention to adopt the unauthorized arrangement.'" *Id.* (*quoting Monarch Ins. Co. of Ohio v. Ins. Corp. of Ir. Ltd.*, 835 F.2d 32, 36 (2d Cir. 1987)).

Ratification may result from "silence or inaction." *Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*, 152 F.Supp.3d 159, 165 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). "[W]here the principal knows of an unauthorized act taken on his [or her] behalf and remains silent, he is deemed to have ratified the act." *RLI Ins. Co. v. Athan Contracting Corp.*, 667 F.Supp.2d 229, 235 (E.D.N.Y. 2009) (internal quotation marks and citation omitted). *See also Vargas Realty Enters., Inc.*, 440 B.R. at 235 ("Ratification also occurs when a principal fails to object to the unauthorized act of another, despite an opportunity to do so."); *Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*, 152 F.Supp.3d 159, 165 (S.D.N.Y. 2016) ("acquiescence may give rise to an implied ratification") (internal quotation marks and citation omitted).

"A principal may ratify even those unauthorized acts deemed to be fraudulent." *Vargas Realty Enters., Inc.*, 440 B.R. at 235.

25

### 3.     Waiver

"A waiver is the voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim or privilege, which except for such waiver the party would have enjoyed." *Mendelsohn v. Nat'l Westminister Bank, U.S.A. (In re Frank Santora Equip. Corp.)*, 256 B.R. 354, 370-71 (Bankr. E.D.N.Y. 2000). *See also MVP Health Plan, Inc. v. Optuminsight, Inc.*, No. 13-cv-1578, 2016 WL 6638190, at *9 (N.D.N.Y. Sept. 30, 2016) ("A waiver is the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable.") (internal quotation marks and citations omitted).

To establish waiver, it is necessary to show that there has been an "intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *Intelligent Digital Sys., LLC v. Beazley Ins. Co., Inc.*, 962 F.Supp.2d 451, 459 (E.D.N.Y. 2013) (internal quotation marks and citations omitted). The essential elements are "(1) an existing right, benefit or advantage; (2) actual or constructive knowledge of the existence of such right, benefit or advantage; and (3) an actual intention to relinquish it or an adequate substitute for such intention." *Mendelsohn*, 256 B.R. at 371.

A waiver can take place through the parties' course of conduct. *See MVP Health Plan, Inc.*, 2016 WL 6638190, at *9. Oral or "implied by conduct" waivers may be sufficient, unless the relevant parties have a signed writing prohibiting such waivers. *See id.* (internal quotation marks and citation omitted).

### 4.     Fraud/Aiding and Abetting Fraud

"[A] tenant by the entirety may be estopped from invalidating a conveyance under the Statute of Frauds . . . if the absence of the non-signing owner's signature is a product of fraud or misrepresentation." *Mad Scientists Brewing Partners, LLC v. Deptula*, No. 655/2012, 2013 WL

26

692949, at *5 (N.Y. Sup. Ct. Feb. 13, 2013). Under New York law, the elements of a fraud claim are "(1) a material, false representation (2) made with knowledge of its falsity and (3) intent to defraud, upon which (4) the plaintiff reasonably relies, (5) causing the plaintiff damage." *Basso v. NYU*, 363 F.Supp.3d 413, 421 (S.D.N.Y. 2019). Moreover, to "establish liability for aiding and abetting fraud under New York law, the plaintiffs must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*, Nos. 18-cv-6658, 18-cv-10936, 2019 WL 1570808, at *9 (S.D.N.Y. Apr. 11, 2019) (internal quotation marks and citation omitted).

* * *

Thus, as is clear from the above, whether it be estoppel, ratification, waiver, or fraud/aiding and abetting fraud, Plaintiff's knowledge (or lack thereof) of the Debtor's pledge of all of the proceeds of sale of the New York Property and/or her active participation in such transaction (or lack thereof) is key. If Plaintiff had knowledge of and actively participated in the transaction, she will be estopped from denying the Debtor's authority to enter into it. If Plaintiff gained knowledge of the transaction after the fact and remained silent and/or failed to repudiate it, she will be held to have ratified it. If Plaintiff had knowledge of the transaction and her right to repudiate it, but failed to do so, she will also be held to have waived the right to object to it. Finally, if the Debtor fraudulently pledged Plaintiff's share of the proceeds of sale of the New York Property and she had knowledge of and actively participated in such fraud, she will be held to have aided and abetted it.

In this case, Plaintiff has admitted that she knew about the State Court Action and discussed L&R's financial condition with her husband after it was commenced, (*see* Wexelbaum

27

Aff., Ex. V, Tara Tr. 21:14-24; 23:7-24:2), but she never asserted her tenancy by the entirety rights in the State Court Action or objected to the attachment of her share of the proceeds of sale of the New York Property until CF2's motion for an order of attachment was granted.

In addition, Plaintiff's failure to provide CF2 with the expedited and limited discovery authorized by this Court has prevented it from determining whether she had knowledge of and/or participated in the Debtor's pledge of all of the proceeds of the sale of New York Property. As discussed in the Affidavit of Michael Wexelbaum, Plaintiff limited her document production to documents dealing solely with efforts to sell the New York Property. *See* Wexelbaum Aff. ¶¶ 29, 34(A) & (B); Ex. X. However, CF2's document requests were not limited to only those documents that reference the New York Property. Rather, CF2 requested all documents pertaining to the Counsel Financial entities and their business relationships and loan transactions with L&R and Jeffrey Liddle during the timeframe January 1, 2016, to date. *See id.* ¶¶ 27-28; Ex. W. Significantly, not a single document has been produced by Plaintiff with respect to the business dealings between the Counsel Financial entities and L&R and Jeffrey Liddle. *See id.* ¶ 28. While Plaintiff may claim that she has no such documents in her possession, the fact is that she failed and refused to run CF2's proposed search terms that were designed and intended to elicit such documents. *See id.* ¶ 34(B).

The dearth of Plaintiff's document production, and the failure and refusal of her and her attorney to conduct a proper search for responsive documents, was then compounded by her repeated failures of recollection at her deposition. *See id.* ¶ 34(C). With respect to the documents referenced and discussed in the Affidavit of Michael Wexelbaum, Plaintiff's stock answer and repeated refrain with respect to any conversations with her husband about those documents was "I don't recall" or words to that effect. *See id.* ¶ 34(D). Until Plaintiff conducts a proper search

660113v.7

for responsive documents, CF2 will be unable to fully determine the truthfulness of her testimony, including whether she had knowledge of and/or participated in the pledge of the proceeds of sale of the New York Property, and whether to press forward with its claim to the $1,090,603.88.

CF2 intends to bring a motion to compel Plaintiff to conduct a proper search for responsive documents. But for now and purposes of this motion, since Plaintiff failed to provide CF2 with the expedited and limited discovery authorized by this Court and which CF2 needed to properly contest that Plaintiff had met her burden of showing a "'clear' or 'substantial' likelihood of success on the merits," her motion should be denied.[16]

## CONCLUSION

For all of the foregoing reasons, CF2 respectfully requests that Plaintiff's motion for a preliminary injunction be denied in its entirety.

Dated: New York, New York
          July 19, 2019

                                    DAVIDOFF HUTCHER & CITRON LLP


                                    By: /s/ David H. Wander
                                            David H. Wander, Esq.
                                    605 Third Avenue, 34th Floor
                                    New York, New York 10158
                                    (212) 557-7200
                                    dhw@dhclegal.com

                                    *Attorneys for Counsel Financial II LLC*

---

[16] Although a party seeking a preliminary injunction must also show that a "preliminary injunction is 'in the public interest,'" that is, that it will not "'cause harm to the public interest,'" (*Doe*, 2019 WL 111020, at *7 (citation omitted)), Plaintiff has completely failed to address this element in her papers. This is one more reason that her motion should be denied. *See, e.g., Air Line Pilots Ass'n v. United Air Lines, Inc.*, No. 11-cv-4661, 2011 WL 4543820, at *1 (E.D.N.Y. Sept. 29, 2011) ("Injunctive relief is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing, carries the burden of persuasion*.") (internal quotation marks and citation omitted; emphasis added).

29

660113v.7